The next matter, number 24-1844, Brad O'Brien v. United States. At this time, would Counsel for the Appellant O'Brien please introduce himself on the record to begin. May it please the Court, Adam Satin for the Plaintiff Appellant. I would request two minutes be reserved for rebuttal, please. You may. Thank you. The issue in this case relates to the substitution of the United States of America for Dr. Rocha. Dr. Rocha, in order to be deemed covered by the FTCA, by federal statute, required the Secretary to make a formal determination, a factual determination, that Dr. Rocha's provision of services to individuals who were not patients of the federally funded clinic met certain specific factual criteria. And there is absolutely no evidence on this record for this panel to conclude that the requirements of the statute were met. The clear mandate of Congress in that statute, Section 233G1C and D, required unequivocally that the determination of extending coverage to Dr. Rocha be made, I'm sorry, for patients who were not clinic patients, be made only after review of an application that must contain detailed information with supporting documentation to verify that the employee meets the requirements of those requirements and criteria in subsection C of the statute. And importantly, also, that the requirements for paragraphs under Section H be met. The defendant will tell you that this deeming did not require to be made in the manner that the statute required. The deeming decision that was on record for the First Circuit in the first appeal that we had is clear and specific that it did review factual documentation under that subparagraph H. Subparagraph H relates to things like malpractice claims in the health center and by the employees of the health center so that there can be a determination that we want to extend FTCA coverage to these people. The actual deeming decision at 99-100 is a general deeming decision and does not, by its expressed terms, apply to the care of patients who were not clinic patients. Pages 99-100 of the Joint Appendix specifically notes that that subparagraph H was reviewed for the detailed documentation as to the malpractice claims, the claims history and those items and it is absolutely silent about deeming related to subparagraph B2. Subparagraph B2 is when there's going to be an extension of FTCA coverage to the employee when they're caring for patients who are not clinic patients. Mrs. Allen was a private patient who had a medical crisis at home and was brought to a private hospital, had no affiliation with the health center, the clinic that Dr. Rocha apparently did some work at and she was cared for him there. That requirement that they say that the extension of FTCA coverage must be supported with documents, you will find no documents in this record, you will not even see the application in the Joint Appendix. How did that come to be? This lawsuit is about whether an application complies with the law to have the effect that the government says it has. How do we get a suit that doesn't have the application in the record? So we requested the complete application from Dr. Rocha, we were afforded some discovery in Justice Scalia's prior opinion, we requested the full application from Dr. Rocha, we moved to compel when they did not provide the full application and our motion to compel was denied. Judge Gorton indicated that the USA is the proper party to respond and the USA has not submitted the complete application with the attachments. I will tell you that from what they have submitted, there is nothing about the factual requirements in that subparagraph C which were needed to be present for specific deeming. Subparagraph C lays out the circumstances where you might extend after review of the application and the supporting documents, those are the things that you need documentation for the secretary to verify after review of it. They did not do it and in fact the documents that they point to, Dr. Rocha's employment contract was not a part of the department's file for him, it was not part of that application and so they are trying after the fact to say, well, you know, we didn't ask for a specific deeming of him but interestingly the first circuit before the last oral argument had issued an order to the government and it said, the sine qua non of your argument that substitution is proper is a specific deeming instruction, please produce it within seven days or admit that determination didn't happen. They filed a response that did not include a deeming determination and incidentally the general deeming that I mentioned earlier was on file so the first circuit order, I believe Judge Selya said it was his order beforehand the last time, that was something that they knew that there had been a general deeming. This was about deeming for coverage to patients who have nothing to do with the health center. When you say that there was a general deeming on file, do you mean there was an application for the particular services? For FTCA coverage to patients of the clinic. So people who go to a federally funded health center and see an employee of the health center, it is a much different analysis for them to be deemed public health service employees. So you say there is such an application for that deeming, it's just not in the record? Well, it's not in the record for you. The deeming decision is that's at page 99 to 100, but that does not, and by its expressed terms does not say as it does with subparagraph H, which it does not say that it has reviewed any detailed factual information that was required under subsections D and subsection C to establish that Dr. Rocha meets those criteria. And they say, well, he was obligated, may I just finish that point? Yes. He was obligated to be on call at the hospital except his employment contract, which does not say that, was not part of any application process. You don't have any evidence that that was ever even submitted. And if you look at the terms of it, he didn't even have a requirement that it be LGH that he have privileges at. So let me just, if you don't mind me following up, I mean, so there's two methods of deeming, and the one involved here is this so-called pre-deeming, right? That's what they're claiming by the regulation.  So, and that really, your argument about the invalidity of the pre-deeming, so to speak, really relies on the contract and a very technical reading of the contract. I mean, doesn't it come down to that? I guess I would say I agree that I have, if you actually scrutinize the contract, which the secretary didn't because it wasn't provided to him or her, the problem with the regulation is that it negates the whole review and determination process that was required. There was no detailed information as required in subparagraph D. The idea of pre-deeming, the idea that there are going to be circumstances where you have to anticipate in advance that the doctor is deemed because you don't have time to get in and do the particularized finding. So, for example, like a doctor needs to be on call. I mean, that's, and he has to have privileges. And so there are going to be those kinds of circumstances, and that's what pre-deeming is all about, isn't it? But the problem with that, your honor, is that regulation cannot undo what the statute says must be done, which means you need detailed documents for them to make a finding. And that that extension of coverage cannot be made. It's in the words of the statute, extension of coverage to patients who are not patients of the clinic cannot be made until after review of that application with those specific documents. Thank you. Counsel, for the appellee, please introduce yourself on the record to begin. Good morning, and may it please the Court. Kevin Soder from the Department of Justice for the Government. I think there's been some confusion in the presentation this morning about two issues that I think would be helpful to distinguish from each other. One is whether the record that's before this Court and that was before the district court properly establishes that the circumstances described in the regulation, 6.6E42, are satisfied for the medical care that's at issue here. I think that quite clearly is the case here. I'm happy to address any questions the Court may have about that, as we've explained in the briefs, that that provision requires that the case involve periodic hospital call or hospital emergency room coverage that's required by the hospital as a condition of obtaining hospital admitting privileges. That's clearly established by JA 260 to 61 of the hospital rules. And the health center must have documentation for the particular health care provider that this coverage is a condition of employment at the health center. And that's clear from the employment contract that's in the record, in particular pages JA 104, paragraph 1E, and JA 105, paragraph 1F, as well as paragraphs 1A and 1B. I believe most of the arguments that plaintiff has pointed to this morning go to the separate issue, which is essentially a broadside facial attack on the way this regulation has worked since 1995. And so I think it's helpful to step back and explain what the statute says and how this application process works. In order to be eligible for this sort of FTCA coverage, a community health center has to have already obtained grant funding under Section 330B of the Public Health Service Act. Then, each calendar year, the entity has to submit an application to be considered a deemed employee of the Public Health Service for purposes of coverage under Section 233. The Secretary determined long ago that there are two different ways that an entity could apply for that coverage. One is the kind that's at issue here, which is to ask for the health center and its employees to be deemed for purposes of the treatment to patients that's covered by the statute, as well as treatment to non-patients in a handful of very specific circumstances that are set forth in the regulation, one of which is the one that we've been talking about here. The other is that the Secretary determined that if you don't squarely fit within one of those examples that the Secretary has already laid out, then you need to submit an additional application for a particularized determination of coverage where you explain why the care that you're providing and document why the care that you're providing maps onto what the statute requires if you're going to extend this coverage to non-patient care. And what the Secretary explained in 1995 in making that sort of predetermination that these specific categories are going to be covered is that, quote, it would be impractical and burdensome to require a separate application and determination of coverage for those common situations described in the regulation. So basically these 330 centers, they're covered and its personnel are covered? Yes. They and their personnel are covered. It's a clearer case when they're dealing with patients of the health center, which this is not that type of case. This is a case involving non-patients of the health center. In order to streamline this application process, what the Secretary determined was that this annual deeming process would require an application. I think there's no – it's quite clear in the record that such an application was submitted, and we have the letter informing the health center that the application was approved. That's at Joint Appendix 99 to 100. And what these regulations say is there are certain facts where it is so obvious to the Secretary that this is going to further the purposes of the statute, and I'm happy to talk about why that's true for uncalled care. Let me also add, these 330 centers, I've dealt with them before in other cases, they literally depend almost entirely on federal funds. So it's to their interest that they comply with these documentations. It's certainly to, I think, HHS's interest and to the health center's interest. It works both ways. It works both ways, and I think, importantly, there's sort of nothing about this argument that I can see why invalidating these longstanding regulations would give any benefit to the general public. But once a 330 center gets approved the first time, it's a matter of simply sending it over year after year after year. It's pretty standardized. It doesn't require a rocket scientist to prepare these applications over and over and over, correct? Correct. There's the grant application, which has to be quite a level of detail and is not the application we're talking about here. Then there's the deeming application each year. You have to show that the requirements of the statute are met. As you see at page 100 of the joint appendix, what the Secretary has reviewed before agreeing that the FTCA coverage would be extended for a calendar year includes that they've implemented appropriate policies to guard against malpractice risk. It also includes, I think, relevant here, review and verification of professional credentials and privileges, references, claims history, fitness, professional review organization findings. So then I take you back to the statutory language. That's our ultimate touchstone here. And as I read 233G, I think it's 1D. It says the Secretary cannot deem an entity or its employees to be public health service and may not apply deeming to B series, which is what we're talking about here, unless, and then it says, entity submitted application in form satisfactory to the Secretary and that the application must contain certain things. Are you saying that was done here or are you saying that didn't need to be done here? That was done here. Okay. And so are you saying the application for the entity suffices to cover both the entity and the employees because that is the way the Secretary has deemed the form and manner of the application process to be followed? Yes. As Your Honor noted, the statute says that this application shall be in such form and such manner as the Secretary shall prescribe, and the Secretary decided that there's two options for the application would exist for reasons that make a complete practical sense and has determined that you do not need to submit a separate application for every single employee, contractor, et cetera, of the entity because your employment relationship with those people who carry out the work of the health center is going to be sufficient to give them the coverage. And, of course, if you have any circumstance where as you are planning out the care that you're providing for the year as a health center, you are not sure whether you're going to be entitled to this malpractice coverage, you may submit an additional application. What the Secretary determined was that those additional applications down to the individual provider level detailing what each of their circumstances would involve is just unnecessary when you fit within one of these commonly recurring scenarios such as where you have someone who has to have hospital admitting privileges to be able to treat the health center patients and in order to have the hospital admitting privileges has to also serve on the on-call schedule which is on fire care for some time. How about a doctor who only sees health service patients? I take it just the entity application would be enough to cover that doctor? Yes. So the way that the process works, the entity application extends to the circumstances covered by the statute and the regulations, and I think importantly everyone who this is important to understand. You want a doctor to understand before they're providing care who their malpractice coverage is going to come from and whether they need to supplement that coverage, and you want HHS to understand so that if a claim is filed, the necessary after-the-fact analysis of what are the facts at issue in the case and do those map on to the insurance coverage that you've obtained. You want to know in advance whether that's going to be true here. Everything the secretary has done serves that purpose. So is there a level of deference that we owe to the secretary's determination of coverage here? Is this like a Skidmore deference situation because the secretary is interpreting their own regulations? I think here what the court can do is look at obviously the language of the statute and the Supreme Court's decision in Loper-Bright makes clear that what you are looking for is whether what the secretary has done is within the bounds set by the statute, and here I think the language of the statute gives quite a bit of room to the secretary to determine what the application process should look like when it says that the secretary shall determine both the, quote, form and the, quote, manner of the application. And I do think that it's, again, just to reiterate, it would be quite significant to invalidate this process and to suggest that essentially every individual who has received this coverage for the last 30 years has not properly been given that coverage because there wasn't a more detailed application submitted that details the care of the doctor in advance. I think we're in a situation where it was clear to the doctor, clear to HHS, that this was going to be squarely covered because this doctor's on-call services to the hospital. How does a patient, as I understand it, on the regulation, the entity doesn't even need to possess the documentation that would show this extension to cover these services? So the entity certainly needs to be able to show when it comes to HHS and says the claim has been filed against us. We think it's within, if I may finish the response. Yes, please finish. We think it's within the coverage. An entity is going to need to be able to prove that up and that's where we get the employment contract here. We have the declaration of Dr. Wilcox's claim. You're gathering them after the services have been provided and the claim has been made. Yes. There's inevitably, as this Court explained in its prior decision in this case, there's going to need to be an application process in advance and an analysis after the fact where you look at what's the nature of this claim and does it fall within the coverage. And doesn't that run a little into the statutory language that the application itself must contain the supporting documentation to verify that the entity or employee satisfies B? No, because I think that the information is sufficient to verify. For example, the entity does have to list its providers at the time. What it doesn't have to do is document for every single provider every detail of their employment relationship with the center. Many of those are going to be situations where you're never going to see a claim arise at all and there is this inevitable after-the-fact analysis that has to be done. We can't look at the application. If we had the entire application in front of us, we could not tell whether this doctor was covered or not. The application is required to list all of the providers, so I think that would be the providers who are employed as of the time of the application. I think one reason why the secretary determined it makes sense to do it this way is there are often going to be changes in who's employed by the entity. And so doing the application at the entity level, which I also think is what the statute clearly says, you need an application for the entity, not multiple applications for each employee of the entity. It makes complete sense in the situation where you're going to have changing situations, you're going to have changes in who you're employed. They do list who is currently employed by them, but the deeming decision that's made, and that's, again, in the record at Joint Appendix 99-100, assures the health center that people who have the requisite relationship with it, it's employees, contractors, et cetera. But the documentation is supposed to verify that the employee satisfies B. It's supposed to be sufficient documentation that would allow for verification of that to verify. It doesn't say that, does it? It says to verify, which I think I understand as allowing for the verification of this information. And importantly, the statute doesn't specify which information must be provided. It says that the secretary is to determine the form and manner and that information needs to be provided. But the statute, again, was enacted shortly after HHS announced in the notice in the Federal Register in 1995 that it would be extending the coverage to these commonly recurring scenarios. And I think it would be quite significant to say that the approach that the secretary has taken for 30 years under which the health center understands whether it's deemed, HHS understands whether it's deemed, has been essentially invalid not only as to this case but as to any other cases in which there might be some implication of this Court's decision about how the regulation works with the statute. Thank you, counsel. Thank you. Two minutes rebuttal. Thank you. Please reintroduce yourself on the record. I'm sorry. May it please the Court. Adam Satin for the plaintiff appellant. Your question, Your Honor, in terms of if we were to see the application in its entirety, would they be able to verify the items in section B2 and C of the statute? Would they be able to verify that Dr. Rocha fit with, squarely fit within those factual circumstances? The answer is absolutely not. There is nothing. He still has not told you that there was any documentation, and your reading of the statute is correct, that the statute doesn't say there needs to be some ability to at some point verify. It actually states that at the time of the application, it must contain. I'm sorry, shall contain. I misspoke. Shall contain detailed information along with supporting documentation to verify that the entity and the employee, as the case may be, meets the requirements of subparagraphs B and C, and that the entity meets the requirements of H. The deeming decision that we have here, review detailed documentation as to H by its express terms. There is nothing to suggest they reviewed anything to suggest that C was met, and C is really what goes to the regulation. So it just was not done. And as to the point of legislative sort of intent, he mentions that there's a committee report that talks about how it would be burdensome, et cetera. At page 372 of the House committee report, it specifically went through, after the suggestion of the circumstances that they would think would, I'm sorry, may I just finish? Yeah, please finish. Would, that they would like to see covered, the law repudiated the fact that they didn't need this process, and in fact, the law said the application will also detail the situations in which health center practitioners treating non-registered patients of the center would be covered. The committee believes that having health centers provide this documentation in advance will enhance greatly the ability of HHS and DOJ to respond to claims. The idea is not to have this verification put together or reconstructed after the fact. It was to do it in advance. They didn't do it, and Dr. Rocco was not properly substituted, and we'd ask that you reverse Judge Gordon's decision in that regard. Okay. Thank you, counsel. Thank you. That concludes argument in this case.